# DOMINICK FORNARO v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

January 9, 1931.

No. 28,173.

*Smith, Callahan & Carlson* and *John C. Crowley, Jr.* for appellant.

*R. T. Boardman* and *J. F. Dulebohn,* for respondent.

OLSEN, J.

Plaintiff appeals from an order granting judgment in favor of the defendant notwithstanding the verdict, made on defendant's alternative motion for judgment or a new trial.

[1]Reported in 234 N. W. 300.

The action is one to recover damages for personal injury. The only question presented and argued here is whether the release given by plaintiff was a bar to recovery. Stated in other words, whether there was sufficient evidence to justify the jury in setting aside the release on the ground that it was obtained by fraud or misrepresentations.

Plaintiff fell down the steps of one of defendant's street cars on February 6, 1929, and suffered some injury. He called his own doctor that same day and was examined by him. The doctor found that plaintiff had some bruises on his body, a sprained back, and some pain on manipulation of the pelvis. He told plaintiff to stay in bed and use hot packs and massage, and gave him a sedative to relieve pain. He visited plaintiff every day for about a week. Nothing further developed, except that a short time later X-ray pictures were taken and showed a deformity of the back, caused by deforming arthritis or rheumatism, at the fourth lumbar vertebra, which had existed prior to the accident. The doctor examined plaintiff shortly before the trial and testified that plaintiff still had difficulty in stooping over or in getting up suddenly and complained of pain; that there were no objective symptoms; that it was difficult to say whether the arthritis, independent of the accident, or the accident, was giving plaintiff a good deal of trouble.

Plaintiff testified that he was confined to bed for about five weeks, then remained in and about the house most of the time until in June; that he was unable to work during that period; that in the latter part of June he went to work in a shoe repair shop, shoe repairing being his trade, but was unable to do heavy work or to run a shoe repairing machine, and because of his condition was able to earn only about one-half as much as he had earned prior to the accident; and that he now wears a brace or belt for his back.

Two days after the accident plaintiff had his wife write a letter to the defendant informing it of the accident. He told her what to say. In that letter she stated: "The Dr. says he will be in bed from four or five weeks if not longer, then when he gets up will have to have his back strapped." The letter is important as show-

ing that plaintiff knew, from his own doctor, the extent of his injuries and the probable consequences that would result therefrom, a week before any settlement was made.

Defendant's claim agent went to see the plaintiff on February 12 and had a conversation with him about the accident and injury. Nothing was said about a settlement at that time. The agent said he or the company would send a doctor to examine the plaintiff. Dr. Corbett was sent to examine, and examined, the plaintiff the next day. Plaintiff testified that Dr. Corbett examined him and told him to remain quiet in bed and be careful; that there was nothing the matter with him and he would be all right in a few days; that he should do what his own doctor told him to do and he would be all right.

On February 15, according to the dates of the release and check, the claim agent came to see plaintiff again. Plaintiff testified that the claim agent said that Dr. Corbett had told him that there was nothing the matter with plaintiff and that he would be all right in a few days; that the agent said he did not think the street car company was at fault; that the company did not give money away; that they would settle up the best they could; that they would pay $150 for this claim; that plaintiff refused to settle for $150; and that the agent then went out to telephone to the company's office and came back and offered $200; that he again told plaintiff he would be sick only a few days and had better take the money, otherwise he would get nothing; that plaintiff again objected that it was not enough and asked what they were going to do after that; that the agent said the company would take care of him and he would make it good for plaintiff. Plaintiff then signed the release and accepted a check for $200, which he cashed. The release covered both known and unknown injuries and consequences of the accident. While plaintiff denied that the release was read to him, it is conceded that he knew he was signing a release of his claim.

There was here no unknown injury, or any mistake as to the nature or extent of the injury. The question of mistake in that respect does not enter into the case. The most that can be said is

that Dr. Corbett was mistaken or over-optimistic in his opinion as to how soon plaintiff would recover. But plaintiff, according to his letter, had been informed by his own doctor that he would be confined to his bed for five weeks or longer and would then have to wear a strap or brace for his back. That is just what did result. Ordinarily plaintiff would rely on the opinion of his own physician, and there is no evidence to the contrary. He must have known at the time he gave the release what his injury was and the probable result thereof. The opinion of Dr. Corbett, who saw the plaintiff only once and did not treat him or have any authority to treat him, who was not present at the time of the settlement and had nothing to do therewith, is not a sufficient ground for avoiding the release. Nelson v. Minneapolis St. Ry. Co. 61 Minn. 167, 63 N. W. 486; Nelson v. C. & N. W. Ry. Co. 111 Minn. 193, 126 N. W. 902, 20 Ann. Cas. 748; Fitzpatrick v. C. M. & St. P. Ry. Co. 121 Minn. 370, 141 N. W. 485.

If false representations as to the character and extent of a plaintiff's injury are made by a physician or agent of the other party for the purpose of inducing a settlement, and such representations cause plaintiff to be deceived regarding existing facts as to the nature and extent of his injury, he may avoid a release given in reliance thereon notwithstanding the good faith of the one making the representations. But if the representations made are correct as to the nature and extent of the injury or the plaintiff is not deceived thereby, the fact that an opinion as to the duration of his disability, honestly given, turns out to be erroneous is not a sufficient ground for avoiding the release. Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. We do not find any evidence of bad faith on the part of Dr. Corbett.

The claim agent merely repeated the statements made by Dr. Corbett and told plaintiff that he was stating what Dr. Corbett had said, which plaintiff already knew. The statements made by the agent, that the company would take care of plaintiff and that he would make it good for plaintiff, we do not find a sufficient ground for avoiding the release. There were no misrepresentations as to the contents of the release and no misrepresentations as to the nature and extent of his injury such as to cause plaintiff to be

deceived. Peterson v. C. M. & St. P. Ry. Co. 36 Minn. 399, 31 N. W. 515; McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N: W. 640; Kowatch v. Pittsburgh Const. Co. 130 Minn. 174, 153 N. W. 326; McDonnell v. C. M. & St. P. Ry. Co. 130 Minn. 125, 153 N. W. 255; Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643.

Plaintiff cites a number of our cases on the question of releases. Some are cases where there were unknown injuries and a clear mistake as to the nature and extent of the injuries. Others show misrepresentations as to the contents or effect of the release or other grounds not here present. We refer to only a few of these cases.

In Mix v. Downing, 176 Minn. 156, 222 N. W. 913, plaintiff had settled for what was assumed to be a minor and temporary injury. He did not recover and was treated by different physicians for some two years. An operation was then performed, and it was discovered that a small piece of bone had been broken off from a vertebra in his back and had caused the trouble. This was an unknown injury at the time of the settlement.

In Jacobson v. C. M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355, plaintiff gave a release two days after his injury, on representations by the attending physician and claim agent that his injuries were not serious and he would fully recover in three or four weeks. An examination a month later showed that he had sustained an impacted fracture of the neck of the femur of one leg, an injury to the sacroiliac joint, a curvature of the spine, and a shortening of one of the legs, which injuries were unknown to him and, so far as appears, unknown to the doctor and claim agent at the time of settlement.

In Vineseck v. G. N. Ry. Co. 136 Minn. 96, 161 N. W. 494, 2 A. L. R. 530, plaintiff's leg was crushed and had to be amputated. He settled with the company for that injury. He had also received a blow on the head and complained of some trouble with his eyes but was assured by the defendant's physician and claim agent that the eye trouble was temporary, not serious, and that he would fully re-

cover therefrom. The trouble with the eyes became worse instead of better and resulted in total blindness.

In Smith v. G. N. Ry. Co. 139 Minn. 343, 166 N. W. 350, there was an injury to plaintiff's eye. He settled with the company on the basis of lost time and two weeks' additional time. There were representations by the physician that the eye was substantially all right and would clear up in two weeks. The eye injury proved serious and resulted in practically total blindness of the eye.

In Bingham v. C. M. & St. P. Ry. Co. 148 Minn. 316, 181 N. W. 845, there was an unknown injury to the sacroiliac joint at the time the release was given.

In Christmann v. G. N. Ry. Co. 181 Minn. 97, 231 N. W. 710, plaintiff testified that the claim agent gave him a check for $500 to help him out and help him care for his family; that he was asked to sign a receipt; that there was no discussion as to damages; and that the agent said they would wait and see what the result of his ailment would be and then make a settlement.

We conclude that the evidence in the present case does not show sufficient grounds for setting aside the release.

Order affirmed.