BERTHA DOLGNER v. DAYTON COMPANY.[1]

February 27, 1931.

No. 28,281.

[1]Reported in 235 N. W. 275.

*Snyder, Gale & Richards,* for appellant.
*Kelly, Berglund & Johnson,* for respondent.

LORING, J.

Plaintiff. recovered a verdict of $1,360 against the defendant for personal injuries received while she was a customer in defendant's store. The defendant appealed from an order denying its blended motion for judgment or a new trial.

The principal question involved on this appeal is whether or not the evidence was sufficient to justify the jury in finding that a release given to the defendant by the plaintiff was given under mutual mistake and therefore not a bar to plaintiff's recovery in this action.

The plaintiff's right shoulder was bruised by a cash box carried by one of the cash girls in the store. The plaintiff suffered considerable pain in her shoulder and was treated by the nurse in the store and then went to her own family physician, Dr. Rosenwald, who diagnosed the injury as a bruise to the soft parts around the shoulder, including the bursa, which he described as a buffer to the shoulder joint. At that time there was no periarthritis, but the doctor recognized the possibility that it might develop. He instructed her to commence using her arm after a week of rest in order to prevent the periarthritis. There was no fracture, and he said that the injury would be called in ordinary parlance a sprain or strain of the shoulder. He says that he told her what his diagnosis was, and she says that he told her that there was some injury to the ligaments. The record is clear that she knew that she had a bruised shoulder and that she had little, if any, movement of it.

Dr. Rosenwald treated the injury by heat and massage and directed warm applications. He predicted that she would be all right in

a week or so. He told her that his bill would be seven or eight dollars, that she would probably need one or two more treatments, and that the sooner she went back to work after a week's rest of the arm the sooner she would get the use of it.

At the trial a Dr. Boe testified for the plaintiff that he had examined her some months after the accident and that she had the result of intramuscular hemorrhage usually due to a bruise of some kind; that she also had a periarthritis, which he said is practically always due to a blow. He also said that she had a subacromial bursitis, which is an inflammation in the little fluid sac which he described as lying near the head of the humerus, the bone of the upper arm. The acromial process is part of the shoulder blade which comes over the head of the humerus. This little sac contains synovial fluid, which facilitates the movement of the shoulder.

It will be seen that there is little difference in the diagnosis made by Dr. Rosenwald from that made by Dr. Boe, except that the former described the injury in less technical language than that employed by the latter. In either case it amounts to the same thing, that is, an injury to the soft parts around the shoulder joint. Both physicians prescribed the same treatment; both found that the bursa was injured and inflamed. Dr. Rosenwald recognized that there was a possibility of a periarthritis. Dr. Boe found that it had developed.

Five days after the plaintiff received her injury she went to the Dayton Company seeking a settlement. They referred her to their insurance company, and she went to its office to settle. She went there to settle her claim, not merely to collect her doctor's bill. She told the representative of the insurance company what Dr. Rosenwald's bill would be and was ready to settle for seven dollars. There was no attempt to bargain with the plaintiff about the settlement. The insurance company prepared a release, and she signed it. She did not read much English and asked the insurance man to read the release to her. There appears to be no controversy between her and the insurance company in regard to the contents

of the instrument as read to her except as to the inclusion of the words "known 'or unknown injuries" in the release. She says that she did not hear those words read to her, and for the purposes of this opinion we shall assume that the release did not contain those words. There was some conversation between the plaintiff and the insurance company's representative about future developments from the injury, and she says that he promised to treat her fairly in event of future trouble. It is perfectly obvious that neither she nor the insurance company anticipated any such delay in recovery as she subsequently experienced.

Some months afterwards she went to another physician, who treated her with heat and massage. It was found necessary to put her under gas and move the arm in various directions so as to free the shoulder joint. The evidence shows that it will be necessary to have this done again, and that in such event there will be a great improvement in the arm but not a complete recovery.

In the case of Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 476, 196 N. W. 643, Commissioner Taylor, speaking for this court, said:

"To justify rescinding a contract or release on the ground of mutual mistake, the mistake must be as to a 'past or present fact material to the contract.' That the injuries for which settlement was made resulted in disabilities and ailments which were not anticipated at the time it was made is not such a mistake. The consequences which will follow in the future from known injuries depend upon so many unknown conditions and contingencies and will vary to such an extent in different individuals that they cannot be known with any degree of certainty. Mistakes in forecasting such consequences are mistakes of opinion, not of fact, and furnish no sufficient ground for annulling the release."

And again [p. 478]:

"To avoid such a release, the rule requires clear and convincing proof that a substantial injury, which was not discovered until after the settlement, had in fact been sustained in the accident and existed at the time of the settlement. That unknown and unexpected consequences resulted from known injuries is not sufficient."

In the case at bar the plaintiff settled for a ridiculously inadequate sum. She was ignorant and improvident, but upon her own motion she sought and obtained a settlement at the figure which she desired. She had gone to her own physician, who had examined her and diagnosed her injuries to be just what they were. There was no substantial injury which he did not find. The fact that periarthritis subsequently developed was an unanticipated consequence of that injury, but there was no mistake in diagnosing. Neither the defendant nor the insurance company had her examined by any physician, nor did they misrepresent to her in any way the character of the injury which she had. She was not sought out or persuaded to settle for the insignificant sum for which she did settle. It was her own proposition. Mere inadequacy of consideration in the absence of fraud is no ground for relieving a party from the consequences of a contract which he has knowingly entered into.

There was necessarily involved in this transaction an element of uncertainty and doubt as to the time of the recovery from the injuries, and the parties knowingly contracted with that in mind regardless of the question as to whether or not the phrase "known or unknown injuries" was included in the release. Under such circumstances, where there has been no overreaching of one party by the other, there can be no relief on the ground of mistake. 2 Pomeroy, Equity Jurisprudence, § 855.

The statements or promises in regard to future favorable treatment are not sufficient to avoid the release. The release was read to her and she understood that she was making a settlement. If she misunderstood its legal effect, she is without a remedy on that account. Fornaro v. Minneapolis St. Ry. Co. 182 Minn. 262, 234 N. W. 300.

We think that the case comes fairly within the rule laid down in Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643, and Fornaro v. Minneapolis St. Ry. Co. 182 Minn. 262, 234 N. W. 300, recently decided by this court.

The order appealed from is reversed and the case remanded to the lower court with directions to enter judgment in favor of the defendant notwithstanding the verdict.

DIBELL, J. (dissenting).

I dissent.

The jury was justified in finding that the release was executed under mutual mistake. The trial court approves its finding.

The injured woman was 44 years old. She could not read, and from the record we take it the jury could find that she was not strikingly acute. The release was "in full satisfaction and extinguishment of all claims and causes of action arising out of any damage or loss, direct or indirect, or bodily injuries, known or unknown, sustained by me in consequence of an accident on or about the 6th day of July, 1927." The inclusion of the words "known or unknown" is not important. The jury could find that they meant nothing additional to her.

In substance she told the insurance company's adjuster that she would be satisfied with the equivalent of her doctor's bill. She then had had five treatments at one dollar each and was to have another and had bought a bottle of liniment. He suggested seven dollars, and she assented. When she was paid she paid her doctor. The insurance company never thought to settle for seven dollars an injury of $1,360. It was just a mistake, in which both parties participated. The adjuster, who seems to have acted kindly, would not have listened to a settlement for that amount unless he misunderstood the injury. The words "known or unknown" in the release, which the woman could not read, do not change a mutually mistaken settlement into one effective in accordance with the strict literal meaning of the words.

HOLT, J. (dissenting).

I concur in the above dissent.