## PACIFIC MUT. LIFE INS. CO. OF CALI-FORNIA v. JACOB.

### No. 10739.

Circuit Court of Appeals, Eighth Circuit.

Feb. 5, 1937.

Larry B. Creson, of Memphis, Tenn. (Sivley, Evans & Evans, Marion G. Evans, and Thomas A. Evans, all of Memphis, Tenn., and A. B. Shafer, of West Memphis, Ark., on the brief), for appellant.

Jesse B. Daggett, of Marianna, Ark. (Charles T. Coleman and Walter G. Riddick, both of Little Rock, Ark., and Charles E. Daggett, of Marianna, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a suit in equity by Leonora C. Jacob to rescind, set aside, and cancel an agreement alleged to have been made between her and defendant insurance company, dated January 24, 1934, which purported to compromise and settle her claim for disability benefits and to cancel the disability clause of her policy with defendant company.

The cause was commenced in the state district court and was duly removed to the federal court.

The cancellation agreement was made by plaintiff with Mr. Olander, an agent for defendant. It reads as follows:

"Received Twelve Hundred Fifty and no/100 ($1250.00) Dollars from The Pacific Mutual Life Insurance Company of California for the following purposes:

"First—In full payment, satisfaction, discharge, compromise and release of any and all claims myself, my heirs, executors, administrators or assigns may now have or may hereafter have against said Company on account of Permanent Total Disability Benefits under its Policy No. 649961 whether the result be fatal or otherwise.

"Second—It is particularly agreed and understood that in consideration of this settlement and at my request the Permanent Total Disability Benefit of said Policy No. is hereby cancelled and entirely eliminated from said Policy as of this date, and that premiums hereafter becoming due under the Policy will be reduced by $17.70 per annum.

"I have read the above release and fully understand the same.

"Witness my hand at Memphis, State of Tennessee, this 24 day of January, 1933 [1934].

"Leonora C. Jacob    [Seal]
"Claimant.
"Martha Bancroft
"Witness
"Roy E. Olander."

It was alleged in the complaint that this cancellation agreement was brought about by misrepresentation and fraud; but during the course of the trial all allegations of fraud were withdrawn and mutual mistake alone was made the ground for demanding the relief prayed in the complaint.

The evidence shows that it was the belief of plaintiff, and of the defendant's agent, and of the doctors who had attended and were attending plaintiff, that her disability would not extend beyond February 1, 1934; but it appears that they were all mistaken in this belief.

The plaintiff testified in her own behalf that the insurance company issued the policy on April 4, 1927, and that it has been in force ever since; that it would be hard for her to say when her disability commenced, but she thinks that she made application for disability in November of 1931; that she has been treated since 1931 by Drs. W. C. Brewer, L. C. Sanders, John L. Jelks, and W. L. Stallworth; also by Dr. Eugene Johnson and by Dr. Blassingame; that she commenced treating with Dr. Jelks in October or November, 1933; that Dr. Sanders, who commenced treating her in the latter part of 1933, told her and her mother and sister that she would be able to go to work by February, 1934; that she acted on this opinion of Dr. Sanders in making the settlement with Mr. Olander in January, 1934.

Dr. Jelks testified that he treated plaintiff from November 15, 1933, to February 3, 1936, and that she had amœbiasis; "that Mrs. Jacobs has been desultory in her treatments and that is one reason she is not well."

Mr. Olander testified that he represented the insurance company in making the cancellation agreement with her in January 1934; that he had no way of knowing when Mrs. Jacob would be well except from the statements made by Dr. Sanders, that in talking with Mrs. Jacob he found that she also believed the statements made by Dr. Sanders.

Dr. Sanders testified that he treated Mrs. Jacob from December, 1933, until June, 1934. He made a report of the case, and this was sent to the insurance company, together with a statement by Mrs. Jacob; that in his report he stated that the disability of Mrs. Jacob was caused by amœbiasis, among other things, and that she would probably be disabled until February 1, 1934, by which time she should improve sufficiently to begin work. This report was dated January 15, 1934. He also testified that he had stated Mrs. Jacob's condition would not be permanent, and that was his impression; that he never told any representative of the insurance company anything different from what appears on his report; that Mrs. Jacob did not follow his recommendations as to treatment; that he has had many cases of chronic amœbiasis and none has resulted in permanent disability.

Dr. Stallworth testified that he treated plaintiff from June, 1933, until December, 1933. He also made a report in which he stated that her disease was chronic amœbiasis. This report was dated January 5, 1934. Dr. Stallworth further testified that at the time of the report Mrs.

Jacob was not permanently disabled, and that the disease from which she suffered was not considered incurable. He further testified that Mrs. Jacob followed recommendations as to her treatment very poorly.

The trial court made findings in favor of plaintiff and set aside the cancellation agreement.

The present appeal was taken by the insurance company from the judgment in favor of the plaintiff.

The appellant takes the position that such a mistake as is disclosed by the testimony is not a mistake of fact, but at most only a mistake of opinion or conjecture; and that an honest mistaken belief held by the parties as to the duration, as distinguished from the character, of the disability, is not a mutual mistake of fact which will be ground for cancellation. Appellant cites and relies upon the following, among other, authorities: Bispham's Principles of Equity (10th Ed.) p. 323; Chicago & N. W. Ry. Co. v. Wilcox, 116 F. 913 (C.C.A.8); Fornaro v. Minneapolis Street Ry. Co., 182 Minn. 262, 234 N.W. 300.

Appellant also contends that the disability complained of by plaintiff was not necessarily of a permanent character, and that the same could be cured if the plaintiff would follow the directions of her doctors.

It is not easy to state with certainty the position of the appellee. It is claimed by appellant that appellee has shifted positions several times during the litigation. In the original complaint the position was that false statements were knowingly made by Olander, the agent of defendant, as to plaintiff's condition, and that these were relied upon by plaintiff, and in reliance thereon the cancellation agreement was made.

By the amendment to the complaint, deception and false representations knowingly made were abandoned, and stress was laid upon the belief honestly believed by all parties that plaintiff would be well by February 1, 1934. The following allegations appear:

"Plaintiff alleges that Dr. L. C. Sanders * * * advised the plaintiff and the defendant that the plaintiff was not totally and permanently disabled, within the meaning of the policy sued on, and that she would be well, and able to perform her ordinary duties and work, by February 1, 1934. In the conference between the plaintiff and Mr. Olander on January 24, 1934, Mr. Olander stated to the plaintiff that the doctors who had treated her, which included Dr. L. C. Sanders, said that the plaintiff was not totally and permanently disabled, within the meaning of the policy. * * * The plaintiff believed the representation made by Mr. Olander as to what the doctors had said about her then condition, and believed the statement of the doctors that she would be well by February 1, 1934, and in reliance on such statements she executed the cancellation of the disability clause. * * * And she further alleges that the agreement to cancel the disability clause was based on the mutual mistake of both the plaintiff and the defendant that the plaintiff was not totally and permanently disabled within the meaning of the policy at that time, and that she would be well and able to perform her ordinary duties, by February 1, 1934."

On the trial, Mr. Coleman, counsel for plaintiff, stated as follows:

"It is not material at all whether she was disabled in January; it is immaterial in this suit, which is to set aside the release because procured by misrepresentation of facts, merely that she would be well by the first of February and able to work at that time. It was a mutual mistake; she believed Dr. Sanders, and Dr. Sanders believed it; and it was based on that mutual mistake. I will agree that they were acting in good faith. Dr. Sanders gave his written report she would be well by February 1st, and on that representation she was relying when she agreed to the cancellation of this clause. * * * the mistake we are relying on here is that the doctor believed and represented she would be well and able to work by February 1st and she relied on the representation. * * *

"We concede all the parties relied on information, but the information was wrong; it turned out to be absolutely wrong; she did not get well by February 1st and two years have elapsed and she is still in this condition. Everybody makes mistakes; let us say it is an honest mistake superinduced by her own doctor and they are all acting on it. * * *

"I don't say that she was totally and permanently disabled on January 24, 1934, or that she is now, we don't know. From our standpoint, this lawsuit doesn't turn on that. That will only be material when she sues to recover, if she does, the install-

ments. But regardless of whether permanently or not permanently and totally .or not total, she has this valuable clause and it was cancelled as a result of a mutual mistake on the part of everybody; that mistake was that she would be a well woman by February 1st or less than 30 days, and it turned out she was not well then. * * *"

On the present appeal, counsel for plaintiff allege in their brief: "Plaintiff does not seek to set aside the cancellation of the disability clause on the ground that Dr. Sanders said she would be able to go to work on February 1st, and that this turned out to be untrue. That is not the mistake on which she relied. The mistake was that she did not have amebiasis on January 15, 1934, but was only weak and nervous as an aftermath of an amebic infection which had been cured. That is the substance and effect of Dr. Sanders' report. That is what the plaintiff and Mr. Olander believed the report to mean. That was the fact which induced the cancellation. The evidence shows, and the defendant will not deny, that the plaintiff had amebiasis on January 15, and that was the fact about which both parties were mistaken. It was a mistake with reference to an existing fact, and the mistake was caused by Dr. Sanders' report, which both parties accepted and acted on."

Placing the best construction possible for plaintiff on the foregoing allegations and statements, we think it is safe to conclude that the charge of false representations knowingly made has been abandoned; and that the charge of mutual mistake of fact remains. This may relate (1) to the belief that plaintiff would be well by February 1, 1934; or (2) whether she had amœbiasis on January 24, 1934, when the cancellation agreement was made.

■ A mutual mistake as to the first cannot be the basis for a suit to set aside a contract. It was simply a case of wrong prognosis—a wrong conjecture as to the duration of a disease.

This court is definitely committed to that view. In Chicago & N. W. Ry. Co. v. Wilcox, 116 F. 913, at page 917, this court, speaking through Judge Walter H. Sanborn, said: " * * * if the doctor made the statement, and if she believed it, these facts would not sustain a cause of action for rescission. It is a mistake as to the existence of a past or present fact material to a contract, and that alone, that will warrant its rescission on the ground of mistake. Conceding, for the moment, that the doctor and the agent told the complainant that there was no doubt that she would be well in a year; that she believed this statement; that she relied upon it, and that she has never recovered,—still these facts do not establish a mistake of fact which will warrant the avoidance of a solemn agreement of settlement. The mistake which they established was a mistake in prophecy, in opinion regarding the happening of a future event on the part of the doctor and of the agent, and a mistake in belief as to what the future had in store for her on the part of the complainant. * * * The future duration and the ultimate effects of the injury were unknown and unknowable future events, a mistake concerning which was a mere mistake of opinion or of belief, and not a mistake of fact. * * * Their mistakes relative to the future duration of the disabilities and the future effects of the personal injuries that form the subjects of their contracts are mistakes of belief, and not of fact, and form no basis for the avoidance of their contracts. Such was the mistake under which the complainant labored. It was a mistake in the opinion of the doctor and in the belief of his patient with reference to unknowable future events. It was not a mistake of a past or of a present fact, and it presents no ground for a rescission of this release." See, also, Fornaro v. Minneapolis Street Ry. Co., supra; Metropolitan Life Ins. Co. v. Humphrey, 167 Tenn. 421, 70 S.W.(2d) 361.

■ If we take the other alleged mistake, i. e., that on January 24, 1934, plaintiff had amœbiasis, the result is the same. There was no mutual mistake nor mistake by any one that the plaintiff had this disease in January, 1934, when the cancellation agreement was made. Plaintiff testified that she knew it; she had been treated for it by Drs. Jelks, Sanders, and Stallworth. She was treated by Dr. Jelks from November, 1933, to February, 1936; by Dr. Sanders from December, 1933, to June, 1934. On January 15, 1934, Dr. Sanders made a report showing that she had amœbiasis. Dr. Stallworth treated her from June 10, 1933, to December 14, 1933. He made a report January 5, 1934, showing that she had chronic amœbiasis. The reports of these doctors were made to the defendant company, so that it knew what the reports contained.

It is to be noted that no one of the three doctors considered the disease permanent; and two of them stated that plaintiff did not follow their directions for treatment.

We think that the defense of mutual mistake of fact has not been clearly established, and that the decree should be reversed and the cause remanded with directions to dismiss plaintiff's bill.

It is so ordered.