**John E. SOMORA, Plaintiff,**

v.

**MARRIOTT CORPORATION, Defendant.**

**Civ. No. 4–91–814.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 8, 1993.

Michael J. Healey, St. Paul, MN, for plaintiff.

Robert L. Grossman and Grossman & Millard, Minneapolis, MN for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendant's motion.

## BACKGROUND

Plaintiff John E. Somora ("Somora") was hired by Hamline University ("Hamline") on August 14, 1989, as a food service manager. During the spring of 1990, Hamline informed its food service employees, including Somora, that defendant Marriott Corporation ("Marriott") was taking over Hamline's food services. In late June of 1990, Somora met with representatives from both Hamline and Marriott to discuss the availability of employment opportunities in the food services area once Marriott took over the operation.

On July 16, 1990, Marriott took over the management of Hamline's food services pursuant to a management agreement between Hamline and Marriott. Article 2.5 of that agreement, entitled "Agency Relationship", states that:

Marriott shall act as agent for Hamline in the management and operation of the Food Services.

Marriott contends that Somora was informed that Hamline was assigning it food services operation to Marriott and that an agency relationship existed between Hamline and Marriott.

After assuming operation of Hamline's food services, Marriott did not offer Somora a position and his employment with Hamline terminated. Dissatisfied with his termination, Somora negotiated a settlement agreement and release with Hamline on July 31, 1990, in which he was paid $1,176.94. Somora was not represented by counsel when negotiating that agreement, and subsequently rescinded the settlement agreement and release.[1]

After Marriott assumed operation of Hamline's food services, Somora hired an attorney, and his attorney began to negotiate the terms of another settlement agreement and release. Negotiations continued from August 1990, until April 2, 1991, at which time Somora signed a second release and Hamline paid him $5,000. The second release states in relevant part that:

> Somora ... does hereby release, acquit, and forever discharge Hamline, its subsidiaries and affiliates, if any, its attorneys, agents, successors, assigns, trustees, directors, officers, administrators, and employees (hereinafter referred to collectively as the "Released Parties") of and from any and all liability, claims, demands, actions, causes of actions, suits, grievances, arbitrations, administrative proceedings and any and all other claims of every kind and nature whatsoever, whether in law or in equity, contract or tort, known or unknown, pertaining to Somora's employment by Hamline, the cessation of Somora's employment, the lack of Hamline's reemployment of Somora, or any acts or omission by any Released Party to date.... Without

---

**1.** The settlement agreement permitted such rescission within a fifteen-day period after Somora executed the agreement.

limiting the generality of the foregoing, Somora waives and releases all claims under the Minnesota Human Rights Act (Minn.Stat. ch. 363); ... all claims under any other local, state or federal antidiscrimination ordinance, act or statute; all claims of age discrimination or disability discrimination; ... all claims of wrongful termination; all tort claims of every nature; ... and all claims which could have been raised by Somora as of the date of this Settlement Agreement and Release.

(Settlement Agreement and Release, para. 2).

Somora subsequently filed the present lawsuit against Marriott, alleging that his termination constitutes disability discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.03, and St. Paul City Ordinance, Chapter 183.-03.

Marriott now moves for summary judgment on the basis of the settlement agreement and release dated April 2, 1991.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider defendant's motion for summary judgment.

Marriott argues that it is entitled to summary judgment on Somora's discrimination claims because the settlement agreement and release immunizes it from liability for any violation of either the MHRA or the St. Paul city ordinance. Marriott claims that the management agreement between Hamline and Marriott clearly provides that Marriott acted as Hamline's agent in the management of Hamline's food services and that the settlement agreement and release signed by Somora explicitly releases all of Hamline's "agents, successors, [and] assigns."

Marriott further contends that Somora and his attorney were aware of that agency relationship during Somora's negotiations with Hamline. Marriott notes that prior to his termination, Somora had met with representatives of both Hamline and Marriott to discuss employment possibilities, and was aware that Marriott continued to operate Hamline's food services during the nine-month period when he was negotiating a settlement with Hamline. Somora was also represented by counsel throughout his negotiations with Hamline. Marriott thus argues that Somora knowingly and volun-

tarily waived his claims under the MHRA and the St. Paul city ordinance.

Somora contends that the settlement agreement and release was not effective because he did not intend to release any claims against Marriott and failed to receive full compensation for any such release. Somora further contends that he was unaware of any agency relationship between Hamline and Marriott, and believed instead that any employment decisions in Hamline's food services operation were solely within Marriott's control. As a result of his alleged lack of knowledge, Somora claims that any release of Marriott was neither knowing nor voluntary. Somora thus asks the court to deny Marriott's motion for summary judgment.

 Under Minnesota law,[2] the court is to presume that:

the parties to a release agreement intend what is expressed in a signed writing.

*Sorensen v. Coast–to–Coast Stores*, 353 N.W.2d 666, 670 (Minn.Ct.App.1984). When determining the validity of a release, the court should consider the clarity of its language. *Id.* at 669 ("The more complicated, confusing or misleading the language the more weight a court will give to a claim of no intent.") The court should also consider whether the release was supported by adequate consideration, *id.* at 670, whether the release purports to settle claims that were unknown at the time of execution and whether the party challenging validity "was permitted to change language in the release". *Schmidt v. Smith*, 299 Minn. 103, 216 N.W.2d 669, 673–74 (1974) (citing various factors court should consider). In addition, the presence of counsel during negotiations is a strong indication of a party's intent to release. *Sorensen*, 353 N.W.2d at 669. Moreover, a release is not to be set aside merely because a party fails to appreciate the legal effects of such release, as long as the party is aware of its terms and alleges no fraud. *Dolgner v. Dayton Company*, 182 Minn. 588, 235 N.W. 275, 277 (1931) (citation omitted).

The court will apply the foregoing principles to analyze the meaning and effect of Somora's settlement agreement and release. *Cf. Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir.1991) (discussing various methods used to ascertain the validity of a release, including sole reliance on contract principles or an examination of the totality of the circumstances).

Examining those factors, the court first notes that Somora was represented by counsel while negotiating the release and had an opportunity to alter its wording. The court further determines that the language of the settlement agreement and release clearly provides that Somora releases Hamline and its "agents, successors, [and] assigns" from all liability arising from the termination of his employment, the failure to rehire him and all other claims that he could have been raised against Hamline and its agents, successors and assigns. The agreement specifically releases Hamline and its agents, successors and assigns from all claims under the MHRA and any local antidiscrimination ordinance, and all claims that could have been brought by Somora at the time the release was signed. *Cf. Schmidt*, 216 N.W.2d at 673–74 (upholding release that clearly intended to release claims arising from unknown injuries). Moreover, the language used in the release is:

short and straightforward. The operative words are not mired in legal jargon nor [sic] hidden in fine print.

*Sorensen*, 353 N.W.2d at 669. The court thus concludes that the settlement and release agreement language is unambiguous and clearly expresses Somora's intent to release Marriott as Hamline's agent, successor or assign. *Cf. Farley v. Northwest Marine Iron Works*, 724 F.Supp. 1274, 1275 (D.Or.1989) (under Oregon statute, an agreement that purports to release a party's agents releases all such agents).

 Despite the clear wording of the settlement agreement, Somora asks the court to consider parol evidence, contend-

---

**2.** The settlement agreement and release provides that the agreement "shall be construed in accordance with the laws of the State of Minne-

sota." Neither party objected, thus the court applied Minnesota law to interpret the settlement agreement and release.

ing that such evidence demonstrates that he was unaware that Marriott was Hamline's agent, successor or assign for purposes of the release. Even if it were to consider such evidence,[3] the court concludes that it is insufficient to overcome the presumption that "parties to a release agreement intend what is expressed in a signed writing." *Sorensen*, 353 N.W.2d at 670. In his brief, Somora concedes that Hamline announced that Marriott would take over the food service operation and employ all of Hamline's employees (*see* Pl.'s Mem.Opp.Summ.J. at 2); that Somora's back injury was discussed at his meeting with Hamline and Marriott representatives (*id.* at 3); that Somora's original attorney threatened to join Hamline in Somora's discrimination claims against Marriott (*id.* at 4); by letter dated November 28, 1990, Somora's attorney again "threatened" to join Hamline in his charge against Marriott (*id.* at 4); Somora's complaint asserts that Marriott took over food services at Hamline "under contract" (Complaint, ¶ III) and that Marriott kept every hourly employee and every managerial employee except Somora (*id.* ¶ IV).

Moreover, during the negotiations, Somora's attorney indicated that he was aware that the settlement agreement and release would operate to release Marriott. Somora negotiated the terms of the original release with Hamline without the representation of counsel. He subsequently rescinded that agreement and obtained the assistance of counsel. Somora's attorney wrote a letter to Hamline, discussing the rescinded settlement agreement and offering to enter into "a similar settlement agreement" with Hamline in return for $15,000. (Letter from Michael C. Black to Thomas J. Teague of 11/1/90.) In that letter, Somora's counsel further noted that Somora:

> would require a few minor modifications in the terms of the [proposed] settlement agreement so as to preserve his potential claims against Marriott Corporation.

*Id.* Despite counsel's concern about the effects of the language in the rescinded

release, other than the amount of the settlement, the wording of the release which Somora ultimately signed was unchanged from that of the rescinded agreement. The court thus concludes that Somora's attorney knew that the wording of the settlement agreement, as executed by Somora, would operate to release his claims against Marriott.

Somora nonetheless asserts in his affidavit that he does not understand the terms "agents", "successors" and "assigns". The court, however, is not to set aside a release merely because the releasor does not understand its legal ramifications, as long as the releasor is aware of its terms and there has been no fraud. *Dolgner v. Dayton Company*, 182 Minn. 588, 235 N.W. 275 (1931). Moreover, as previously indicated, Somora and his attorney had nearly eight months to correct any deficiencies in the wording of the settlement agreement and release, yet chose not to do so. Because Somora was represented by an attorney, and his attorney was aware of the effects of the release that Somora ultimately signed, the court determines that the release will not be set aside on the grounds that Somora did not understand its legal effects.

Moreover, even if the court were to conclude that Somora was unaware of its legal ramifications, the court determines that his lack of knowledge is insufficient to overcome the clear language of the settlement agreement and release. The release purports to extinguish all of Somora's claims against Hamline or its agents, successors and assigns under both the MHRA and all other federal, state and local antidiscrimination laws. Somora argues that any release of his discrimination claims is invalid because it was not knowing and voluntary.

Minnesota courts have not yet determined the standard required for an effective waiver of a party's rights under the MHRA. The MHRA, however, was modeled after Title VII, and under Title

---

**3.** Based on its determination that the language of the settlement agreement is unambiguous, the court notes that under contract law, such evidence should not be used to interpret its terms.

VII, courts determine the effectiveness of any waiver by evaluating whether a party knowingly and voluntarily waived his rights. Neither party objects to the application of the Title VII standard, and in the absence of any precedent, the court determines that Minnesota courts would apply the Title VII "knowingly and voluntarily" standard to determine whether a party's waiver of his MHRA rights was effective. *See generally, Danz v. Jones,* 263 N.W.2d 395, 398–99 (Minn.1978) (noting similarity between the MHRA and Title VII and discussing Minnesota cases where Title VII principles have been used to construe the MHRA); *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 441 (Minn.1983) (based on "substantial similarities in the language and purposes of the two statutes", the Minnesota Supreme Court has "applied principles developed in the adjudication of claims arising under Title VII" to MHRA cases). The court will thus apply that standard to evaluate the effectiveness of Somora's alleged waiver.

Somora argues that his release was not knowing or voluntary because he did not understand some of the terms in the release, was unaware of the legal relationship between Hamline and Marriott, and did not appreciate the legal effect of the release on his claims against Marriott. The Eighth Circuit rejected a similar argument in *Pilon v. University of Minnesota,* 710 F.2d 466 (8th Cir.1983). In *Pilon,* the plaintiff brought a Title VII action alleging that she had been denied employment because of her sex. *Id.* at 467. The Eighth Circuit affirmed a grant of summary judgment on the basis of plaintiff's release despite her claim that:

> She did not intend the release to extinguish her Title VII claim and that in fact she informed her attorney that she wished to reserve this claim.

*Id.* at 467. Recognizing that plaintiff had been represented by counsel throughout the settlement negotiations, the Eighth Circuit held that:

Counsel on both sides agreed to the language to be included in the release, and therefore the parties are assumed to be fully cognizant of the terms of the agreement.

*Id.* at 468. The Eighth Circuit further held that, absent fraud or duress, the unambiguous release of a Title VII claim should not be set aside merely because plaintiff's attorney "improperly advised her as to the legal effects of the words of the release." *Id.* at 468. [4]

Somora argues that *Pilon* is distinguishable because it addressed the effects of a release between the same two parties who were subsequently involved in Title VII litigation. Although *Pilon* did not address the effect of a party's release on its agent, successor or assign, the Eighth Circuit relied on the same standard that the court is to apply in the present case, that is, whether a plaintiff knowingly and voluntarily released a discrimination claim. As previously discussed, the court concludes, like the Eighth Circuit in *Pilon,* that the language of Somora's agreement is unambiguous. Moreover, Somora also alleges no fraud or duress and was represented during negotiations by counsel who knew that the agreement's wording would release Somora's claims against Marriott. The court thus rejects Somora's attempt to distinguish *Pilon.*

When evaluating a release under Title VII, the Seventh Circuit has similarly determined that:

> The plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress. Any other principle would enable plaintiffs to avoid their obligations entered into on the advice of their attorneys by claiming that they did not believe they were releasing their rights, despite the clear language of the waiver.... [W]hen a plaintiff is represented by counsel who actively ne-

---

4. The *Pilon* decision is thus consistent with Minnesota cases that evaluate the validity of a release by focusing on the clarity of its language

and the presence of counsel during negotiations. *See, e.g., Sorensen,* 353 N.W.2d at 669.

gotiate the release, plaintiff must be found to have executed the release or settlement voluntarily and knowingly, unless vitiating circumstances such as fraud or duress existed to nullify plaintiff's ascent to the settlement. The fact that plaintiff's counsel may have incorrectly conveyed the effect of the release or failed to draft language to protect plaintiff's Title VII rights may be remedied through a malpractice action, but not through judicial interpretation of plaintiff's subjective intent. *Riley v. American Family Mut. Ins., Co.,* 881 F.2d 368, 371 (7th Cir.1989). Based on the foregoing, the court concludes that Somora knowingly and voluntarily waived his discrimination claim against Marriott as Hamline's agent, successor or assign.

Somora finally contends that the release agreement is invalid, relying on Minnesota law concerning the impact of release agreements on joint tortfeasors. The present action, however, is based solely on the alleged violation of a Minnesota statute and city ordinance, and thus does not involve the liability of joint tortfeasors.

Even if the court were to apply tort law, the court nonetheless concludes that Hamline and Marriott are not joint tortfeasors. In all of the cases on which Somora relies, each defendant contributed to a plaintiff's injuries through an act of its own negligence. *See, e.g., Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159 (1954) (each joint tortfeasor allegedly contributed to a conspiracy to defraud); *Couillard v. Charles T. Miller Hosp.,* 253 Minn. 418, 92 N.W.2d 96 (1958) (railway company allegedly caused accident, and hospital and physician subsequently committed malpractice). The present situation is clearly distinguishable because Hamline's potential liability as a principal is based solely on Marriott's alleged decision, as Hamline's agent, successor or assign, to terminate Somora.

The cases are further distinguishable because they address only the issue of whether a general release operates to release an unnamed joint tortfeasor; they do not address the separate issue of whether the release of a principal also operates to release the principal's agent if the agreement so provides. In *Luxenburg v. Can–Tex Indus.,* 257 N.W.2d 804 (Minn.1977), the Minnesota Supreme Court acknowledged the difference between the two inquiries. The *Luxenburg* court first determined that a general release will not release a joint tortfeasor unless (1) the plaintiff intended to release that tortfeasor, and (2) the plaintiff was fully compensated. *Id.* at 807. The court then separately considered the argument that the release of the defendant village also released the village's employee, applying principles of respondeat superior. *Id.* at 808. Although the court did not resolve the second issue, leaving it for trial, it clearly considered the issue as distinct from the issue of general release of joint tortfeasors. *Id.*

Moreover, even if it were to apply Minnesota law concerning the release of joint tortfeasors, the court concludes that the settlement agreement and release operates to release Marriott from any liability for Somora's discrimination claims. As previously set forth, under Minnesota law the release of one joint tortfeasor will operate to release the remaining tortfeasor only if (1) that was the intention of the parties to the release, and (2) the injured party received full compensation. *Id.* at 807. Applying that standard, the Minnesota Supreme Court determined that:

> If we apply that rule, then, regardless of what form that release may take, as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, *and there is no manifestation of any intention to the contrary in the agreement,* the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full compensation.

*Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159, 165 (1954) (emphasis added). Thus, the *Gronquist* court recognized that the release of one joint tortfeasor would also release another tortfeasor if the agreement manifested such an intent. As previously discussed, the language of Somora's settlement agreement and release clearly manifests an intent to release Marriott by

providing for the release of Hamline's agents, successors and assigns. The court thus determines that Somora released his discrimination claims against both Hamline and Marriott.

Somora also argues that the release is invalid because he failed to receive full compensation for his alleged injury.

> The sufficiency of consideration rests not on the amount received but upon receipt by a party of something he was not previously entitled to.

*Sorensen,* 353 N.W.2d at 670 (citing *Schmitt–Norton Ford, Inc. v. Ford Motor Co.,* 524 F.Supp. 1099, 1103 (D.Minn.1981)). In the original release negotiated without counsel, Somora received payment of only $1,176.94. After he rescinded that release, Somora and his attorney negotiated a settlement of $5000. Because Somora was represented by counsel in the negotiation of the second release, and received a greater amount of money, money to which he would otherwise not be entitled to, the court concludes that Somora's release was supported by adequate consideration and is sufficient to represent full compensation. *Luxenburg,* 257 N.W.2d at 807 n. 1 ("An amount less than the actual or alleged damages may represent 'full compensation' where the lesser amount reflects a discount due to the fact that liability is disputed."); *Riley,* 881 F.2d at 375 (if "release as a whole is supported by some consideration, plaintiff cannot attack validity of [the] release based on retrospective inadequacy of the settlement" (citation omitted)); *Sorensen,* 353 N.W.2d at 670–71 (finding adequate consideration where in return for a release of all claims, plaintiff was released from any obligation under a franchise agreement).

Based on the foregoing, the court concludes that the settlement agreement and release signed by Somora bars the present action against Marriott.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.