COLLETT v. LOUISVILLE & N. R. CO.
Civ. A. No. 1532.

United States District Court
E. D. Illinois.
June 7, 1948.

Lloyd T. Bailey, of Hot Springs, Ark., Michael H. Lyons, of Chicago, Ill., and William P. Fleming, of East St. Louis, Ill., for plaintiff.

Harold Baltz, of Belleville, Ill., for defendant.

WHAM, District Judge.

The plaintiff has filed suit for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51. He alleges in his complaint that while employed by defendant in interstate commerce and while in exercise of ordinary care and caution for his own safety he was injured as the proximate result of the negligence of the defendant set forth in the complaint; that as a result of his injuries so received both of his legs had to be amputated within an inch or two below the hip joint; that by reason of

financial losses caused and to be caused by his permanently crippled condition, the moneys expended and to be expended for medical care and other care and by reason of his pain and suffering he is damaged in the sum of $150,000.

Defendant's answer admits that plaintiff was an employee of defendant but denies that he was engaged in interstate commerce at the time of his injury and denies that the Federal Employers' Liability Act is applicable; also denies that plaintiff was in exercise of ordinary care for his own safety but affirmatively says his injuries were solely and proximately caused by his own negligence.

As an affirmative defense defendant further alleges that if plaintiff ever was or became entitled to recover damages against defendant by reason of his said injuries such right and his action thereon is now barred because on July 28, 1947 plaintiff and defendant agreed to and did compromise for the sum of $8,000 all claims for damages which plaintiff had or claimed to have against defendant growing out of said injuries which sum of $8,000 was paid to plaintiff by defendant and the plaintiff in consideration thereof agreed to and did execute a release of all said claims and demands. A copy of the release is attached to the answer and is set forth in the margin.[1]

By agreement of counsel as to the necessity for a reply and by order of court plain-

[1] "140 Jul 1947 No. ——
LOUISVILLE & NASHVILLE RAILROAD COMPANY.
To Joe Collett .................. Dr.
Address Irvine, Ky.
Paid by Draft No. 79775
For and in full compromise, settlement, discharge and satisfaction of all claims, demands, or causes of action on account of all injuries to the person, including those that may hereafter develop as well as those now apparent, and all damage to and loss of property as a result of Personal injuries received by me resulting in the loss of both legs while employed as car oiler in Ravenna, Ky., due to being run over by a train on or about May 30th, 1947.
In consideration of the payment to me of the sum of Eight Thousand &...... no/100 Dollars ($8,000.00), I, Joe Collett ....of Irvine, in the County of Estill and State of Kentucky, do hereby release and forever discharge the Louisville & Nashville Railroad Company, and —— its officers, agents and servants from all suits, actions, causes of actions, claims and demands of every character whatsoever that I now have or may hereafter have, growing out of any and all injuries to person and damage to property in consequence of, or in any wise connected with the above accident.
In making this settlement, no promise has been made to me of future employment and the amount paid me in this voucher is paid in settlement of my claim as aforesaid, and not as lost time, wages or otherwise than as aforesaid, and it is distinctly understood and agreed by me that the sole and only consideration inducing me to execute this release is the payment to me of the sum of money mentioned above.

tiff filed his reply to the affirmative defense based upon the alleged release. By the first paragraph of his reply plaintiff denies that he executed and gave defendant a release for a good and valuable consideration and denies that he released all claims and demands arising out of said personal injuries.

By the second paragraph he alleges that plaintiff was ignorant and uneducated, was unfamiliar with the value of his injuries and through false and fraudulent misrepresentations, setting them forth, and by wrongful persuasion defendant fraudulently and wrongfully induced plaintiff to execute the purported release and says that $8,000 was and is an unconscionably small and inadequate sum considering the damage and injury sustained by him.

By paragraph 3 he says in substance that the release was procured within a day or two after plaintiff was removed to his home from the hospital; that while he was still under the influence of opiates administered at the hospital defendant wrongfully and fraudulently and by false misrepresentations induced plaintiff to sign a release while, as defendant's agent knew, plaintiff's mind was befogged and not clear.

By paragraph 4 he sets forth allegations calculated to show that the $8,000 given as consideration for the release was so inadequate in amount as to be "flagrantly against good conscience, fair dealing and equity, and that the release should be declared void and of no effect".

To plaintiff's said reply defendant filed a motion to strike so much of the reply as pertains to allegations of fraud in the release and to dismiss the action for two reasons: (1) That in his reply plaintiff relies upon fraud in the inducement for said release and does not sufficiently allege fraud in the inducement to vitiate the release. (2) That if fraud in the inducement for said release is sufficiently alleged, plaintiff has failed to tender to defendant the return of the sum of $8,000 admitted by plaintiff

to have been received by him as consideration for the execution of the release and having so failed is not entitled to maintain the action.

Upon consideration I am of opinion that the reply should not be stricken on the ground of insufficient allegations of fraud in the inducement of the release.

Should it be stricken because of failure to tender a return of the $8,000 admittedly received for the execution of the release?

Paragraph 1 of the reply is a qualified denial of the execution of the release and is plainly grounded upon the allegations of fraud and unfair advantage in the inducement set forth in the subsequent paragraphs of the reply. Consequently, no issue as to the actual execution of the release by the plaintiff or the acceptance of the $8,000 by him is tendered in the reply. The issue tendered is whether the release is void for fraud in the inducement. If, in a damage suit based on the Federal Employers' Liability Act the law requires a tender of the return of the consideration received for a release in order to maintain an attack upon the release as being void for fraud in its inducement then plaintiff's reply here must be stricken.

Counsel are in agreement that the question here in dispute, arising as it does out of a federal statute, is one of federal law. Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 164 A.L.R. 387. Plaintiff, while citing other authorities, relies chiefly upon the recent case of Irish v. Central Vermont Ry. Inc., 1 Cir., 164 F.2d 837, 839, for support of his position that tender of a return of the consideration for the release is not required. In that case which arose under the Federal Employers' Liability Act and involved a release and the necessity for the return of its consideration in order to sustain an attack upon it the opinion enunciated two general principles which concern us here as follows:

"We have recently decided that federal law controls in a suit under this federal

Before executing this release I have fully informed myself of its contents, and I execute it will full knowledge thereof, and of my own free will and accord.

I have read the release and understand it.

Witness my hand at Irvine, Ky. this 28th day of July, 1947.

/s/ Joe Collett

Witness:
/s/ Gracie Collett
/s/ T. E. Pinkston"

statute as to the validity of a release pleaded and proved in bar of the action. Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 164 A.L.R. 387; accord, Thompson v. Camp, 6·Cir., 163 F.2d 396, 400. Cf. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. So it is immaterial that the motion to dismiss the complaint may have been decided correctly under local law. * * *

"Ordinarily it is true that one may not keep the fruits of his contract and at the same time repudiate it on the ground that he was fraudulently induced to make it. Grymes v. Sanders, 93 U.S. 55, 23 L.Ed. 798; Singer v. Friedman, 66 App.D.C. 191, 85 F.2d 690, certiorari denied, 299 U.S. 590, 57 S.Ct. 116, 81 L.Ed. 435."

Having stated the general principle set forth in the last quoted paragraph the court went on to distinguish the case before that court, saying:

"But the question here is not when, in general, making restitution is a condition precedent to setting a contract aside for fraud, but the narrower one whether a contract not to sue on a claim within the coverage of the Federal Employers' Liability Act, may by virtue of Sec. 5 of that Act, 45 U.S.C.A. § 55, be repudiated for fraud without a tender of the consideration received.

"The pertinent part of that section reads: 'Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common·carrier to exempt itself from any liability created by the Act, shall to that extent be void: * * * .' "

Then, relying on Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575, the court reached the conclusion expressed in the following language:

"We leave undecided the effect of Sec. 5 as to a bona fide compromise and settlement. But we do hold that, if this release were obtained fraudulently by the appellee, it was within the broad scope of the phrase 'any * * * device whatsoever,' in Sec. 5 and consequently void. It follows that the plaintiff was free to attack its validity without restitution. Duncan v. Thompson, supra."

As recognized by the court in the Irish case it is proper to point out here that the contract of release involved in Duncan v. Thompson, supra, quite contrary to the release involved in the Irish case and the one here in question, was, on its face, not a contract of full and complete settlement and compromise but a contract of partial settlement looking to a later settlement in full. While the contract in the Duncan case provided that suit should not be brought unless the money paid in partial settlement were returned to the carrier, it appeared that the money was paid in contemplation of the fact that it was to be used for living expenses pending settlement by one who would be unable to return ·it. Under those circumstances, when the return of the money was insisted upon according to the letter of the contract as a precedent to maintaining suit for damages not included in the settlement, the contract was brought within the condemnation of Section 5 of the Act.

The court in the Irish case was of opinion that fraud in the inducement of a contract arising under the Federal Employers' Liability Act even though it were a full and complete settlement brought such a contract within the condemnation of said Section 5 as being a device to enable the carrier to exempt itself from liability and made the return of the consideration unnecessary for maintenance of a suit for damages. The reasoning of the court was to the effect that a compromise and release obtained by fraud under which the employer paid money to the injured employee who, in turn, spent it so that he could not return it, would operate as a device, prohibited by Section 5 of the Act, to exempt the employer from liability created by the Act if the employee were required to return the fruits of the contract before he would be permitted to maintain a suit to repudiate it. That might be true if fraud in the inducement were admitted by the carrier. This reasoning appears to be faulty, however, where the fraud is denied. It compels the court, upon the bare allegation of fraud by plaintiff, to ignore the denial of fraud by the carrier and to assume such fraud in the release as will constitute

it a device by the carrier to exempt itself from liability.

■■ But fraud in the inducement of a contract, whether it be a contract of compromise and release or otherwise cannot be assumed. To attack successfully for fraud a duly executed contract one must carry the burden of showing alleged fraud which vitiates it. In absence of such showing it stands as a valid and binding contract. That this generally accepted principle holds true with regard to a contract of compromise and release in a Federal Employers' Liability case is now established law by the decision of the Supreme Court in Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 298. The court there said:

"We are urged, however, to decide in this case that the release was properly disregarded by the trial court upon the ground that the burden should not be on one who attacks a release, to show grounds of mutual mistake or fraud, but should rest upon the one who pleads such a contract, to prove the absence of those grounds. It is not contended that this is or ever has been the law; rather, it is contended that it should be the law, at least as to railroad cases. The amicus brief puts it that 'We ask that the burden of establishing the validity of a release taken from a railroad employe under the Federal Employers' Liability Act be placed on the railroad. And that where but a nominal sum has been paid which is less than or even equal to only the wages lost, that fact of itself be held to be evidence of at least a mistake of facts, if not presumed fraud, since the railroad possesses superior facilities for determining the extent of injuries * * *.' Considerable reliance is placed upon a concurring opinion in the Court of Appeals for the Second Circuit in Ricketts v. Pennsylvania R. Co. [2 Cir.], 153 F.2d 757, 760, 164 A. L.R. 387. However persuasive the arguments there stated may be that inequality of bargaining power might well justify a change in the law, they are also a frank recognition that the Congress has made no such change. An amendment of this character is for the Congress to consider rather than for the courts to introduce. If the Congress were to adopt a policy depriving settlements of litigation of their prima facie validity, it might also make compensation for injuries more certain and the amounts thereof less speculative. But until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."

Since the substantive and procedural rights involved in an attack upon a contract of compromise and release in an Employers' Liability case are governed by the same general principles that apply to other contracts the general principle which requires the return of the fruits of the contract before it can be attacked for fraud is applicable also. Vandervelden v. Chicago & N. W. Ry. Co., C.C., 61 F. 54; Patterson v. Cincinnati, N. O. & T. P. Ry. Co., D.C., 5 F.Supp. 595, and cases there cited. Logically, it would seem that the only escape from that conclusion would be the further conclusion that said general principles are modified or made inapplicable by the provision of Section 5 of the Act. That the latter conclusion would not be sound or sustainable would seem to be established by the language of the Supreme Court in the Callen case, supra, as follows:

"The plaintiff has also contended that this release violates § 5 of the Federal Employers' Liability Act which provides that any contract to enable any common carrier to 'exempt itself from any liability created by this chapter, shall to that extent be void'. 35 Stat. 66, 45 U.S.C. § 55, 45 U.S. C.A. § 55. It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation."

Though the Callen case did not involve the question before the court as to whether the consideration of a release must be returned before a suit may be maintained to avoid it, the conclusion that a contract of release rests on the same footing as all oth-

er contracts attacked 'for fraud .is inescapable and compels the further conclusion that the tender of the consideration is essential. It seems logical to believe that the court's decision in the Irish case, supra, might well have been different had the Callen case, supra, been decided and the court's opinion published at that time. It is true, however, that the consideration paid in compromise and settlement in the Irish case was fairly nominal in amount and the contract contemplated other and subsequent acts on the part of the carrier.

In the case before this court the amount of $8,000 must be looked upon as a substantial consideration even in view of the seriousness of plaintiff's injuries and particularly in view of defendant's denial of any liability. There can be no question but the contract is, in form, a full and complete contract of compromise and settlement.

Wherefore, since the plaintiff's reply which does not deny the release but attacks it as being void for fraud in its inducement fails to tender or to allege that a tender has been made of a return of the $8,000 paid by defendant for the release the reply must be stricken unless the tender of the return of the $8,000 is made on or before August 1, 1948 and the reply amended by said date to show such tender. If the reply be not so amended on or before August 1, 1948, the reply will be stricken and the defendant's motion to dismiss the case will be sustained.