## FRANK J. ALLISON v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

January 8, 1954.

No. 35,959.

---

[1]Reported in 62 N. W. (2d) 374.

*William A. Tautges, Robert M. Austin,* and *Peterson & Brady,* for appellant.

*Millett V. O'Connell, Faegre & Benson, Paul J. McGough, John A. McEachron, Jr.,* and *G. Alan Cunningham,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Frank J. Allison under the federal employers' liability act (45 USCA, §§ 51 to 60) for personal injuries sustained July 22, 1950, while he was engaged in his employment by defendant in the latter's yards at Oelwein, Iowa. Plaintiff claims that defendant negligently permitted spikes to project from its railroad ties in the yard where he was working so that, as a result, he came in contact with one or more of them, tripped, and fell across a rail, sustaining permanent injuries to his back.

Defendant denied liability and the extent of the injuries claimed by plaintiff and as a further defense alleged that on August 11, 1950, in consideration of $200, plaintiff had released it from all claims arising out of the accident.

In his reply plaintiff denied that he had signed a release for his injuries and alleged that, if he signed such an instrument, it was under the belief that the $200 paid therewith represented only his loss of wages between July 23, 1950, and August 11, 1950, occasioned by his injuries. He further alleged that he was induced to sign the instrument by the false statements of defendant's physician that he had fully recovered from his injuries and could resume his regular employment at that time. He offered to credit the $200 against any verdict received.

At the trial plaintiff's testimony as to conversations with defendant's claim agent relative to the release was limited under M. S. A. 595.04 because of the death of the agent prior to trial.

Plaintiff testified that before he returned to work he drew $25 from defendant and that about four days after he returned to work he received an additional $175; that he did not then read the printed matter on the checks or the receipts which accompanied them beyond ascertaining the sum of money described therein; that he had not read the instrument which he signed at the time the check for $175 was delivered to him and that he did not know it was a release; that his daily wage was then $14.10; that he was absent from work on account of the injury between July 23, 1950, and August 7, 1950; that he had had two prior accidents while working for defendants; and that in each when he was paid money therefor by defendant he signed "receipts" like he did "with all of them." It does not appear that a copy of the instrument was left with him.

He further testified that the instrument was signed only after and in reliance upon certain statements made to him by Dr. Ward, defendant's physician, to the effect that his injury was limited to a "bruised back" from which he would fully recover in three or four weeks and which would not prevent his return to work August 7, 1950; that such statements were untrue; that he did not recover within three or four weeks but thereafter his injuries became more acute and painful. He presented medical testimony that the injuries resulted in a narrowing of the intervertebral space between the fifth lumbar vertebra and the sacrum and a lumbosacral strain involving his lower back, with approximately 40 percent partial permanent disability.

At the close of the testimony defendant moved for a directed verdict on the grounds, among others, (1) that the evidence failed to establish that the release was obtained by fraud or through mutual mistake of fact and (2) that, there having been no timely rescission of the release by plaintiff, it was determinative of the action. This motion was denied, and the trial court then charged the jury with reference to the release as follows:

"If you decide that the plaintiff has proved by a *fair preponderance of the evidence* that Doctor Ward made the representations substantially as plaintiff testified to; that they were untrue * * *

even though made in good faith by Doctor Ward; that plaintiff relied on such false representations of Doctor Ward; that plaintiff signed the releases and * * * the checks relying on such representations * * * and * * * was damaged thereby, then you must decide that the release is not a defense to the plaintiff's suit for damages in this case but in so far as he has received the $200.00, the railroad company is entitled, in any event, to a credit therefor." (Italics supplied.)

Following the court's charge, defendant's counsel excepted thereto as follows:

"* * * defendant excepts to the Court's permitting the jury to simply credit the amount of the release against the verdict, rather than submit the question of rescission and timeliness thereof."

The jury returned a verdict for plaintiff for $18,000. Subsequently, defendant moved for judgment notwithstanding the verdict or for a new trial. On September 23, 1952, the court granted its motion for judgment notwithstanding the verdict but did not pass on the motion for a new trial. In a memorandum made a part of its order, the trial court stated:

"As a matter of law, the evidence showed no mistake of fact or fraud in procuring the release. The mistake was in prophecy only. The law set forth in Chicago & N. W. Ry. Co. v. Wilcox, 116 Fed. 913 (8th Cir., 1902), is applicable. Also applicable are the following cases:

"Richardson v. Chicago, Milwaukee & St. Paul Ry. Co., 157 Minn. 474, 196 N. W. 643.

"Dolgner v. Dayton Co., 182 Minn. 588, 235 N. W. 275.

"Yocum v. Chicago, R. I. & P. Ry. Co., 189 Minn. 397, 249 N. W. 672.

"The evidence is also conclusive, as a matter of law, that plaintiff did not timely make a rescission and timely tender back the consideration received for the releases; the defendant's claim agent and one of the defendant's doctors died prior to the commencement of this action; the defendant, therefore, did not have the opportunity

of getting information relative to the extent of the injuries and the circumstances surrounding the procuring of the release.

"See: Graham v. Atchison, T. & S. F. Ry. Co., 176 F. (2d) 819 (9th Cir., 1949)."

This is an appeal from the *whole of the order* of September 23, 1952. On appeal plaintiff contends (1) that it was for the jury to determine whether the release was procured through mistake of fact or fraud and a *fair preponderance of the evidence* sustained the finding of its invalidity on this ground and (2) that the evidence did not conclusively establish that he had failed to make a timely rescission of the release after discovery of the mistake or fraud.

Defendant asserts (1) that there was not the *clear, certain, and unequivocal* evidence of mistake or fraud necessary to support a finding of invalidity—that Dr. Ward's statements being merely prophecies or expressions of opinion as to future events, not shown to be incorrect, were insufficient for that purpose—and (2) that the evidence *conclusively* established plaintiff's failure to make a timely rescission of the release. Defendant also moved to dismiss the appeal on the ground that an order granting judgment notwithstanding the verdict is nonappealable.

■ We are of the opinion that an appeal will lie from the whole of an order granting a motion for judgment notwithstanding the verdict, which motion in the alternative was also for a new trial. M. S. A. 605.06, superseded to some extent by Rule 50.02 of the Rules of Civil Procedure, provides:

"'* * * If the motion for judgment notwithstanding the verdict be denied, the supreme court, on appeal from the judgment, may order judgment to be entered, when it appears * * * that a verdict should have been so directed * * *; and it may also so order, *on appeal from the whole order denying such motion when made in the alternative form,* whether a new trial was granted or denied by such order." (Italics supplied.)

Defendant asserts that this section does not authorize an appeal from the whole of an order *granting* a motion for judgment notwithstanding the verdict as in the instant case. However, in Snyder v.

Minnetonka & W. B. Nav. Co. 151 Minn. 36, 39, 185 N. W. 959, 960, after reviewing previous decisions construing this section, some of which appeared conflicting, we stated:

"* * * The statement in the opinion [Kommerstad v. G. N. Ry. Co. 125 Minn. 297, 299, 146 N. W. 975], that under the present statute plaintiff could not 'have appealed from the whole order had the defendant's motion for judgment been granted' must be regarded as inadvertent and contrary to the rule established by the Peterson case [Peterson v. Minneapolis St. Ry. Co. 90 Minn. 52, 95 N. W. 751], and the previous decisions referred to.

"* * * We hold that, when one party makes the motion in the alternative for judgment notwithstanding the verdict or for a new trial and judgment is granted, the other party can appeal from the order, * * *."

Rule 50.02(2) in effect at the time of trial provides:

"A motion for judgment notwithstanding the verdict may include in the alternative a motion for a new trial. When such alternative motion is made and the court grants the motion for judgment notwithstanding the verdict, the court shall at the same time grant or deny the motion for a new trial, but in such case the order on the motion for a new trial shall become effective only if and *when the order granting the motion for judgment notwithstanding the verdict is reversed,* vacated, or set aside." (Italics supplied.)

The ruling in the Snyder case has been in effect for over 30 years serving as a guide for the bench and bar during such time. While it does not literally construe § 605.06, in the interests of consistency we must adhere to it. Our conclusion is strengthened by reference to the italicized portion of Rule 50.02(2) above from which it can be fairly inferred that it was intended that an order granting a motion for judgment notwithstanding the verdict should be appealable if made in response to the alternative motion referred to therein.[2]

[2]For an able discussion on this point, see Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309.

■ Both parties concede that the validity of the release, made under the federal employers' liability act, is to be determined by federal rather than state law. Dice v. Akron, C. & Y. R. Co. 342 U. S. 359, 72 S. Ct. 312, 96 L. ed. 398; Chicago & N. W. Ry. Co. v. Curl (8 Cir.) 178 F. (2d) 497; Irish v. Central Vermont Ry. Inc. (2 Cir.) 164 F. (2d) 837.

■ It seems clear under the latest federal decisions that the applicable rule governing the weight of evidence essential to the avoidance of a release for mistake or fraud, under the federal employers' liability act, is the "fair preponderance" rather than the "clear, unequivocal, and convincing" evidence rule. Thus in Dice v. Akron, C. & Y. R. Co. 342 U. S. 359, 360, 72 S. Ct. 312, 313, 96 L. ed. 398, 402, it was stated:

"* * * The trial judge * * * held that the facts did not 'sustain either in law or equity the allegations of fraud by clear, unequivocal and convincing evidence.' "

In a footnote to this it stated further:

"* * * since the verdict was for petitioner, he does not here challenge this charge as imposing too heavy a burden under controlling federal law."

In the special concurrence of four justices therein, it was stated (342 U. S. 369, 72 S. Ct. 318, 96 L. ed. 407):

"* * * Such proof of fraud need be only by a preponderance of relevant evidence. See Union Pacific R. Co. v. Harris, 158 U. S. 326. * * *

"* * * we cannot say with confidence that the Ohio trial judge applied the Federal standard correctly. * * * he made an extended analysis of the relevant circumstances of the release, concluding, however, that there was no 'clear, unequivocal and convincing evidence' of fraud. Since these elusive words fail to assure us that the trial judge followed the Federal test and did not require some larger quantum of proof, we would return the case for further proceedings on the sole question of fraud in the release."

In Purvis v. Pennsylvania R. Co. (3 Cir.) 198 F. (2d) 631, 633, the court discussed at length the prevalent rule stating:

"Though of but collateral interest in this particular case it is important to comment at this time on the quality of proof necessary to set aside a release in this type of action. Until Dice v. Akron, C. & Y. R. Co., 342 U. S. 359, 72 S. Ct. 312, it had been assumed that the federal rule was that the evidence had to be clear, unequivocal and convincing. * * * Mr. Justice Frankfurter * * * wrote the dissenting opinion in Dice, 342 U. S. 359, 364, 72 S. Ct. 312. * * * the dissent stated, 342 U. S. at page 369, 72 S. Ct. at page 318, 'In order to prevent diminution of railroad workers' nationally-uniform right to recover, the standard for the validity of a release of contested liability must be federal.' * * * 'Such proof of fraud need be only by a preponderance of relevant evidence.' (Emphasis supplied).

"We are satisfied that if and when the problem is squarely before the Supreme Court the rule pronounced will be in accord with Mr. Justice Frankfurter's above quoted language * * *."

In Camerlin v. New York Cent. R. Co. (1 Cir.) 199 F. (2d) 698, 704, the foregoing decisions were summarized as follows:

"* * * under the Federal Employers' Liability Act, we take the federal rule now to be, as was indicated in the recent case of Purvis v. Pennsylvania R. R. Co., 3 Cir., 1952, 198 F. 2d 631, that it is enough if the employee establishes, by a preponderance of the relevant evidence, the facts invalidating the release." (Italics supplied.)

In accordance with the rule expressed in these late decisions, we must apply the "fair preponderance" rule in weighing the evidence here presented.

■ Both the trial court and defendant's counsel take the view that the statements of defendant's physician at the time of the release were mere expressions of opinion or prophecy as to future events and, under the doctrine of Chicago & N. W. Ry. Co. v. Wilcox (8 Cir.) 116 F. 913, insufficient to invalidate the release. We feel

that the Wilcox case is distinguishable from the instant case. In the former, the injuries consisted of a broken hip and were fully disclosed by the attending physician. Here, plaintiff was advised merely that he had a "bruised back" from which he would recover in "three or four weeks." At no time was it known to him that a narrowing of the intervertebral space between the fifth lumbar vertebra and the sacrum and a lumbosacral strain would result from the injuries or that he would suffer a 40 percent permanent partial disability therefrom. It is inconceivable that he would have executed a release for $200 with knowledge of such facts in mind.

The rule to be applied has been expressed in a number of recent federal decisions. Thus in Scheer v. Rockne Motors Corp. (2 Cir.) 68 F. (2d) 942, 945, where plaintiff had been wrongly advised that she was not seriously injured but had suffered only a strained back and would be about in a short time, the court stated:

"* * * These assurances were much more positive than those before the court in Chicago & N. W. Ry. v. Wilcox, 116 F. 913 (C. C. A. 8). * * * To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood."

In Chicago & N. W. Ry. Co. v. Curl (8 Cir.) 178 F. (2d) 497, 501, the court of appeals distinguished the facts there from those which governed its previous decision in the Wilcox case, stating:

"* * * We do not question the rule of the Wilcox case. * * * But appellant is in error in its appraisal of the evidence. * * * In the Wilcox case the injury for which the plaintiff gave her release was known. There was no mistake as to the *character or extent* of her injury. The mistake upon which she relied for the rescission of the release was a mistake in the prophecy or opinion of her physician as to the time required for her recovery from a known injury. In this case there was much more. The evidence was sufficient to justify the jury in finding that the release was given as the result of a mutual mistake as to the nature of the injury sustained. Appel-

lant's evidence leaves little room for doubt that the physician * * * the claim agent * * * and the appellee honestly believed that appellee's injuries were of minor character and that his complete recovery was assured for the immediate future. There was a mistake of both parties concerning a present fact material to the contract." (Italics supplied.)

See, also, G. N. Ry. Co. v. Fowler (9 Cir.) 136 F. 118; Steele v. Erie R. Co. (W. D. N. Y.) 54 F. (2d) 688.

Based upon these decisions, we hold that the statements made to plaintiff by defendant's physician and relied upon by plaintiff at the time the release was executed were mistakes as to present material facts and, if later found to be incorrect or untrue, sufficient to invalidate the release executed in reliance thereon.

■ Plaintiff's evidence appears sufficient to sustain the finding that his disabilities were proximately caused by the accident. His testimony as to the accident is undisputed. He further testified that his back did not get better in four weeks, as Dr. Ward predicted, but kept getting worse; that the pain increased and thereafter was so sharp that his legs became weakened and would not support him; that on January 7, 1951, because of pain and because his legs would not support him, he quit his employment; that thereafter he was attended by defendant's physician, Dr. Galvin, about once a month until the latter's death a few months before trial; that since January 7, 1951, his pain and weakness has continued; and that he has been unable to work from that date.

Dr. John P. Korchik, called on his behalf, expressed the opinion, based upon his examination of plaintiff, that the latter was suffering from injuries to the back, a narrowing of the intervertebral space between the fifth lumbar vertebra and the sacrum, and a lumbosacral strain involving his back muscles and ligaments and that the accident on July 22, 1950, was a competent producing cause of such injuries which had resulted in a 40 percent permanent partial disability for plaintiff.

While defendant presented evidence tending to establish that whatever disabilities plaintiff then suffered were not proximately

caused by the accident, under well-established rules, the duty of resolving this conflicting evidence rested with the jury. Its determination with respect thereto established that the statements of defendant's physician made at the time the release was executed were incorrect; that plaintiff had executed the release in reliance thereon; and that, hence, the release thus induced was invalid. It follows that the court erred in granting judgment for defendant on the ground that the evidence was insufficient to support the verdict on the issue of mistake.

■ The trial court was of the further opinion that plaintiff's failure to tender back the consideration paid for the release or otherwise to rescind it constituted a bar to his present action. We do not feel that on the evidence here it could be said as a matter of law that plaintiff's actions constituted a ratification of the settlement made. He testified that he had not at any time read the instrument and was unaware that it was a release. The sum paid him was less than he would have earned had he worked during the period of his first disability. From his dealing with defendant in previous accidents it could be concluded that he thought the instrument constituted a receipt only. Under these circumstances, whether he ratified the settlement was an issue of fact for the jury.

It is true that there are numerous federal decisions which hold that a tender or return of money received for a release must be made before the institution of an action to invalidate it on the grounds of fraud or mistake[3] (Collett v. Louisville & N. R. Co. [E. D. Ill.] 81 F. Supp. 428; Graham v. Atchison, T. & S. F. Ry. Co. [9 Cir.] 176 F. [2d] 819; Mahr v. Union Pac. R. Co. [9 Cir.] 170 F. 699; Price v. Connors [9 Cir.] 146 F. 503; Hill v. N. P. Ry. Co. [9 Cir.] 113 F. 914; Pacific Greyhound Lines v. Zane [9 Cir.] 160 F. [2d] 731) and that its retention for an unreasonable length of time by a claimant with full knowledge of the material facts constitutes a ratification of it. 45 Am. Jur., Release, § 25; Graham v.

---

[3]For Minnesota decisions expressing this rule, see Serr v. Biwabik Concrete Aggregate Co. 202 Minn. 165, 278 N. W. 355, 117 A. L. R. 1009; Rase v. M. St. P. & S. S. M. Ry. Co. 118 Minn. 437, 137 N. W. 176; Marple v. M. & St. L. R. Co. 115 Minn 262, 132 N W. 333.

Atchison, T. & S. F. Ry. Co. (9 Cir.) 176 F. (2d) 819, citing the following: Restatement, Restitution, § 65; Restatement, Contracts, §§ 349, 480; 17 C. J. S., Contracts, § 439; Miles v. Lavender (9 Cir.) 10 F. (2d) 450, 454; Irish v. Central Vermont Ry. Inc. (2 Cir.) 164 F. (2d) 837. These decisions, however, do not appear to cover situations where a party, *sui juris* at the time, executed the release without knowledge of its purport.

Under the federal employers' liability act there can be no ratification of a release without *full knowledge of its terms or of the facts attending the act to be ratified,* unless there are other unequivocal acts establishing that the claimant intended thereby to discharge his claim. Receipt of money in itself is not an affirmance of the release unless paid after claimant knew or should have known that he had a cause of action and that the money paid was in full satisfaction of it. Thus, where a plaintiff testified that he did not read the instrument purporting to be a release and believed the sum paid him was for wages lost, it was held that he could maintain his action even though he had not restored or offered to restore the amount received thereon. 23 R. C. L., Release, § 19; Ricketts v. Pennsylvania R. Co. (2 Cir.) 153 F. (2d) 757; Miles v. Lavender (9 Cir.) 10 F. (2d) 450; Brown v. Pennsylvania R. Co. (2 Cir.) 158 F. (2d) 795.

Where the latter situation is presented, it is generally held that it is for the jury to determine whether retention of the consideration and failure to otherwise repudiate the release constitutes a ratification thereof. Thus in Purvis v. Pennsylvania R. Co. (3 Cir.) 198 F. (2d) 631, 633, it was stated:

"\* \* \* We reject as unreasonable the theory of the endorsement indicating ratification of the release as a matter of law where as here Purvis at the time did not even know he had executed a release."

In Graham v. Atchison, T. & S. F. Ry. Co. (9 Cir.) 176 F. (2d) 819, 827, the general language supports this viewpoint. There it was stated:

"* * * there is no hard and fast rule as to what lapse of time will amount to laches. Every case must be judged by the facts surrounding it. * * *

"On the whole, courts are very liberal in the matter. * * *

* * * * *

"The plaintiff was entitled to have the facts relating to the timeliness of the rescission submitted to the jury."

See, Brown v. Pennsylvania R. Co. (2 Cir.) 158 F. (2d) 795.

It is true that in some of the cases cited the instrument signed was actually represented to be something other than a release and, hence, involved fraud in the inducement of the instrument challenged, so that lack of knowledge formed both the basis for seeking to have it set aside and the defense for failure to restore the consideration paid thereon.

We feel the above rules are applicable to the facts in the instant case where plaintiff testified he had at no time read the release and did not know it discharged his claim; where the consideration paid was less than his lost wages; and where his first knowledge that a release had been executed came from defendant's answer served after the action had been started. The jury determined that his testimony was credible. Under such circumstances, he could scarcely be charged with the obligation of rescinding an instrument by return of the consideration paid for it when he was unaware of its existence. It follows that his offer to return the consideration or apply it on any verdict returned, as set forth in the reply, was not untimely as a matter of law. See, Collett v. Louisville & N. R. Co. (E. D. Ill.) 81 F. Supp. 428, 433.

The order appealed from is reversed and the verdict reinstated.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.