152 So.2d 188 (1963)
Beulah Mae OVERSTREET, as Administratrix of the Estate of Willie Lee Overstreet, Appellant,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, Appellee.
No. D-422.
District Court of Appeal of Florida. First District.
April 16, 1963.
Rehearing Denied May 7, 1963.
Howell, Kirby, Montgomery & Sands, Jacksonville, and William A. McQueen, Folkston, Ga., for appellant.
Ragland, Kurz, Toole & Martin, Jacksonville, for appellee.
RAWLS, Judge.
Plaintiff, widow and administratrix of the estate of Willie Lee Overstreet, brought *189 this action to assert her rights under the Federal Employers' Liability Act.[1] The substance of plaintiff's amended complaint is: that on May 10, 1960, her husband was operating defendant's Fordson tractor and rotary mower and was mowing grass on defendant's right-of-way at its direction, and while working alone the tractor turned over, resulting in his death; that the cause of his death was the negligence of defendant in whole or in part, due to defendant's failure to furnish her husband a safe place to work, in that 1. the character and weight distribution of the tractor and mower was such that the tractor would almost turn over when mowing sharp inclines prescribed by defendant to be mowed, 2. a large metal root harrow located on the right-of-way to be mowed was too heavy for decedent to move and constituted a dangerous condition as to performance of the duties of his employment. Defendant's answer asserted among other things, the defense that plaintiff executed and delivered to it a general release in writing of all liability in consideration of the sum of $6,000. Plaintiff replied to the foregoing defense with allegations of fraudulent practices by defendant's claim agent in effectuating the settlement, and upon motion the chancellor:
1. Denied defendant's motion for summary judgment as to liability.
2. Required plaintiff to tender by a time certain (56 days) to defendant the $6,000 paid for the release, or in the alternative suffer a dismissal.
Plaintiff did not tender the $6,000 to defendant (but offered to credit the same against any verdict recovered against defendant in the cause) and the chancellor on June 29th entered his order of dismissal with prejudice. It is from this order that plaintiff has appealed.
The sole question presented is whether the plaintiff, under the federal statute must tender the proceeds of the settlement as a condition precedent to maintenance of the action. Counsel for both parties have cited numerous state decisions, including decisions from this jurisdiction, in their respective briefs as supporting their position. However, we are here dealing with a right of action created by federal statute. Federal decisions govern the question of the sufficiency of the evidence, the type of proof necessary for judgment and the burden of proof.[2] It is axiomatic that federal decisions must govern the question presented on this appeal.
Title 45 U.S.C.A. § 55 first prescribes the invalidity of any contract or device of whatsoever sort to exempt a common carrier from any liability placed on it by FELA. Both parties agree that the general release executed by the widow is not a device[3] contemplated by this section. However, the widow urges that the $6,000 paid to her by the railroad is actually "indemnity" as contemplated by the remainder of this section viz.:
"* * * Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."
and, therefore, tender of said sum is by the terms of the statute not a prerequisite to institution of suit.
The particular point presented has not been decided by the Supreme Court of the United States. Constructions place upon *190 the foregoing statute in two particular cases are important in reaching our conclusion. In Irish v. Central Vermont Ry., Inc.[4] an injured employee settled his claim for an amputated leg for the sum of $1,500, executed a general release and endorsed a check for said sum. Upon trial there was testimony that concurrent with the execution of the release defendant's agent promised to help procure a pension. Further evidence revealed that plaintiff was not legally eligible for a pension and that defendant's agent undertook to arrange for further employment with the railroad in another category, which efforts eventually failed. The Circuit Court of Appeals, Second Circuit, in holding that restitution was not a condition precedent to maintenance of the action stated:
"* * * We leave undecided the effect of Sec. 5 as to a bona fide compromise and settlement. But we do hold that, if this release were obtained fraudulently by the appellee, it was within the broad scope of the phrase `any * * * device whatsoever,' in Sec. 5 and consequently void. It follows that the plaintiff was free to attack its validity without restitution. Duncan v. Thompson, [315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575] supra."
It is apparent from the foregoing the court held that the release constituted a device within the meaning of Section 55 and, therefore, was void.
Callen v. Penn. Railroad Co.,[5] involved a general release executed by an employee to his railroad employer in consideration of $250.00. It was conceded that a mutual mistake existed between the parties as to the extent of the employee's injuries. No fraud was involved. Tender prerequisite to institution of suit by the employee was not in issue. The trial court instructed the jury not to consider the release as binding upon plaintiff's claim for permanent injuries. The Circuit Court of Appeals, Third District, reversed the case upon the grounds that the trial court erred in instructing the jury not to consider the release as binding and certiorari was taken to the United States Supreme Court. Of pertinent interest is the fact that the United Railroad Workers of America CIO appeared as amicus curiae in the cause while same was pending before the Supreme Court and asserted that the burden of establishing the validity of the release taken from a railroad employee under the Federal Employer's Liability Act should be placed on the railroad especially where a nominal sum had been paid for said release, and that such fact itself should be held to be evidence of presumed fraud since the railroad possessed superior facilities for determining the extent of the injuries. The Supreme Court speaking through Mr. Justice Jackson rejected the position of amicus curiae and of the injured employee and in such rejection stated the following pertinent principle of law affecting this cause:
"However persuasive the arguments there stated may be that inequality of bargaining power might well justify a change in the law, they are also a frank recognition that the Congress has made no such change. An amendment of this character is for the Congress to consider rather than for the courts to introduce. If the Congress were to adopt a policy depriving settlements of litigation of their prima facie validity, it might also make compensation for injuries more certain and the amount thereof less speculative. But until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."
*191 Consequently, the Supreme Court of the United States squarely held that an injury arising out of a claim founded upon the FELA may be compromised between the parties on the same basis as the release of others and that Section 55 does not apply to such a compromise.
A direct conflict exists among the federal authorities as to the substantive and procedural rights in a factual situation as here presented. For decisional purposes, we must assume that the widow's allegations of fraud are sufficient to state a defense to the release. We find two major federal cases directly in point  Marshall v. New York Central R. Co.[6] a Seventh Circuit Court of Appeals opinion which sustains the widow's position; Collett v. Louisville & N.R. Co.[7] a District Court opinion, which sustains the railroad's position. Each of these cases cite substantial federal authority for their respective conclusions.
Marshall involved a factual situation somewhat analogous to the instant cause.[8] Within three days after the death of her husband, Marshall's widow, in consideration of $4,350.00, executed a release in favor of the railroad, which she subsequently alleged and testified was procured by the fraudulence of the railroad's agent. The trial court directed a verdict for the railroad on the grounds that the widow's proof was insufficient to raise a submissible issue on the question of fraud. After reviewing the evidence in detail, the appellate court concluded that the trial court erred in directing a verdict and then made the following statement on page 906 of 218 F.2d which is pertinent here:[9]
"Defendant argues, not too seriously, that plaintiff as a prerequisite to her right to maintain the action was bound to make restitution of the amount which she received. Under circumstances similar to those here, it has been held to the contrary, and we think correctly. Irish v. Central Vermont Ry., Inc., 2 Cir., 164 F.2d 837, 840; Graham v. Atchison T. & S.F. Ry. Co., 9 Cir., 176 F.2d 819, 826. See also Indiana, Decatur & Western Railway Co. v. Fowler, 201 Ill. 152, 66 N.E. 394, and Johnson v. Elgin, Joliet & Eastern Ry. Co., 338 Ill. App. 316, 87 N.E.2d 567."
Collett concerned a similar situation. There, the employee lost both legs which he alleged was while employed within the provisions of the FELA. The railroad denied liability on several grounds, and as an affirmative defense alleged the previous compromise of any claim on the employee's part by payment of the sum of $8,000, and concurrently the execution of a release by the employee. A copy of the release was attached. The employee then affirmatively defended against the release on the grounds of fraud in the inducement. At this point, the trial court held that the allegations of fraud were sufficient to withstand a motion to strike, and then considered the question of whether the employee's reply should be stricken because of failure to tender a return of the $8,000 which the employee had admittedly received. The court in concluding that a tender by the employee was necessary to maintain the action, stated on page 432 the following:[10]
"But fraud in the inducement of a contract, whether it be a contract of compromise and release or otherwise cannot be assumed. To attack successfully for fraud a duly executed contract one must carry the burden of showing alleged fraud which vitiates it. In absence of such showing it stands as a valid and binding contract. That this generally accepted principle holds true *192 with regard to a contract of compromise and release in a Federal Employers' Liability case is now established law by the decision of the Supreme Court in Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 298.
* * * * * *
"Since the substantive and procedural rights involved in an attack upon a contract of compromise and release in an Employers' Liability case are governed by the same general principles that apply to other contracts the general principle which requires the return of the fruits of the contract before it can be attacked for fraud is applicable also. Vandervelden v. Chicago & N.W.R. Co., C.C. [8 Cir.,] 61 F. 54; Patterson v. Cincinnati, N.O. & T.P.R. Co., D.C., 5 F. Supp. 595, and cases there cited"
The trial judge in considering the authorities upon the subject stated in his memorandum opinion, viz.:
"The question of whether or not plaintiff must, as a condition precedent to the further maintaining of this action and the litigation of the validity of the said release, return or tender the return of the consideration for said release was fully argued and briefed prior to the entry of said order of April 5, 1962. It now clearly appears that Plaintiff will not or cannot make the required tender.
"This is not a case where any doubt exists as to the injury or damages. Neither is this a case within the scope of 45 U.S.C. Sec. 55 which declares invalid any contract or device to exempt a common carrier from any liability placed on it by the FELA, and under which a line of cases hold only an offer to credit sufficient to maintain an action. See Irish v. Central Vermont Ry., 2 Cir.1947, 164 F.2d 837, 840. This was a death case, a fact known initially and thereafter to all concerned in this litigation. There can be no application of the authorities on unilateral and/or mutual mistake of fact type cases. Those cases are not applicable here. The only possible basis upon which an attack could be made upon the release taken in this case is that of fraud in its procurement and execution.
"Since the substantive and procedural rights involved in an attack upon a contract of compromise and release in an FELA case are governed by the same general principles that apply to other contracts the general principle which requires the return of the fruits of the contract before it can be attacked for fraud is applicable, also there can be no attack upon the release in question on grounds of fraud without a tender of the consideration for the release under attack. Collett v. Louisville & N.R. Co., 81 F. Supp. 428; Vandervelden v. Chicago & N.W. Ry. Co., 61 F. 54; Hill v. Northern Pacific Railroad Company, 113 F. 914; and Patterson v. Cincinnati, N.O. & T.P. Ry. Co., D.C., 5 F. Supp. 595."
As existed in Collett, the consideration paid in the instant cause was substantial. A controversy existed between the widow and the railroad as to its liability in the first instance and this controversy was admittedly compromised by the payment of the railroad to the widow of the sum of $6,000. The widow now alleges fraud on the part of the railroad in the effectuation of the compromise. The substantive federal law upon the subject was set out in Irish v. Central Vermont Ry., supra, when it was stated:
"Ordinarily it is true that one may not keep the fruits of his contract and at the same time repudiate it on the ground that he was fraudulently induced to make it."
We conclude that the trial court was correct in applying the reasoning and holding of the Collett case to the instant cause, and that such decision correctly stated the *193 applicable federal law to the subject matter here considered.
Affirmed.
STURGIS, A.C.J., concurs.
WIGGINTON, J., dissents.
WIGGINTON, Judge (dissenting).
I am inclined to the view that the holding of the Court in Marshall v. New York Central R. Co., 218 F.2d 900, is controlling and requires the judgment appealed to be reversed.
NOTES
[1] Title 45 U.S.C.A. §§ 51-60.
[2] Atlantic Coast Line Railroad Co. v. Barrett, 101 So.2d 37 (Fla. 1958).
[3] An agreement not to sue at time of employment has been held to constitute such a device.
[4] Irish v. Central Vermont Ry., Inc., 164 F.2d 837, 840 (2d Cir.1947).
[5] Callen v. Penn. Railroad Co., 332 U.S. 625, 68 S.Ct. 296, 298, 92 L.Ed. 242.
[6] Marshall v. New York Central R. Co., 218 F.2d 900 (7th Cir.1955).
[7] Collett v. Louisville & N.R. Co., 81 F. Supp. 428 (E.D.Ill. 1948).
[8] Although liability of the railroad was more apparent there than in the instant cause.
[9] See Footnote 6.
[10] See Footnote 7.