ACTION INSTRUMENTS CO.,
INC., Appellant,

v.

HI–G, INC., et al., Respondents.

No. C4–84–1046.

Court of Appeals of Minnesota.

Dec. 24, 1984.

Thomas J. Germscheid, St. Paul, for appellant.

Robert S. Brill, St. Paul, for respondents.

Heard, considered, and decided by LANSING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant, Action Instruments Co., Inc. (Action), from a Washington County District Court judgment granting summary judgment to respondents, Hi-G, Inc., Hi-G/AMS Controls Corporation, and Seth Lukash (Hi-G/AMS). We reverse.

## FACTS

On November 12, 1979, Action and A.M.S., Inc. (A.M.S.) entered into a merger agreement. Between November 12, 1979, and May 29, 1980, Action allegedly spent over $142,000 to facilitate the merger. The merger efforts terminated on May 29, 1980.

After rescission of the merger agreement, Action demanded that A.M.S. repay the $142,000. Negotiations were conducted regarding the repayment. A.M.S. represented to Action that it was unable to repay the full amount, and proposed that the total amount due be reduced to the sum of $30,000.

During the course of the negotiations, James Pinto, president of Action, spoke with Respondent, Seth Lukash, then vice-president of Hi-G, Inc. (Hi-G). Pinto introduced Lukash to Gordon Minns, president of A.M.S. Subsequently, Hi-G conferred with A.M.S. concerning a possible purchase or merger.

Prior to accepting the A.M.S. settlement offer of $30,000, Pinto asked Lukash whether Hi-G was interested in purchasing A.M.S. Lukash told him that Hi-G had no such interest. In alleged reliance on this statement, Action settled with A.M.S. on September 29, 1980. A.M.S. paid $13,000 immediately and was to pay $17,000 within six months.

Thereafter, Seth Lukash sent to A.M.S. a letter of intent dated October 2, 1980, setting forth a proposed purchase of A.M.S. Later that month, A.M.S. and Hi-G exhibited together at a trade show. In January 1981, Hi-G sent notice to Action that it had purchased the assets of A.M.S., and gave notice of a bulk transfer of A.M.S. assets to a new corporation, Hi-G/A.M.S. Controls Corporation, which was totally owned by Hi-G.

On March 26, 1981, Alvin Lukash, then president of Hi-G, sent a $17,900 check to Action along with a letter. In the letter, Lukash stated that the check covered "everything owed to you in regards to A.M.S., Inc." He also expressed his happiness in finally settling up the matter. The letter was written on the stationery of Hi-G. The check was drawn on the account of Hi-G/A.M.S. Controls Corporation. There is no agreement regarding what the extra $900 was for.

After receiving the check, Pinto allegedly had a telephone conversation with Alvin Lukash. Lukash does not recall this conversation. Pinto testified that he informed Lukash of his refusal to accept the payment as full settlement of all claims against Hi-G/A.M.S. He also gave Lukash a couple of days to stop payment on the check. Pinto eventually negotiated the check without agreement as to its scope.

In August 1981, Action commenced an action against Hi-G/A.M.S. for fraudulent inducement of the settlement agreement. The trial court granted the motion of Hi-G/A.M.S. for summary judgment based on accord and satisfaction. Action appeals.

## ISSUES

1. Did the trial court err in granting the motion of Hi-G/A.M.S. for summary judg-

ment on the theory of accord and satisfaction?

2. Were Hi-G/A.M.S. released from liability when Action affirmed the September 29, 1980, settlement agreement?

3. Is Action, as a matter of law, unable to prove damages?

## ANALYSIS

■ 1. On appeal from summary judgment, it is the function of the reviewing court to determine whether there are any issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328 (Minn.1979). This court is not to determine the case on the merits, nor is it to consider credibility. *Forsblad v. Jepson*, 292 Minn. 458, 459–460, 195 N.W.2d 429, 430 (1972).

■ An accord and satisfaction is a method of discharging a contract or cause of action, the accord being a contract between the creditor and debtor for settlement of the claim, and the satisfaction being the execution or performance of the accord. *Don Kral Inc. v. Lindstrom*, 286 Minn. 37, 173 N.W.2d 921 (1970). In no case in which mutual agreement was lacking has the Minnesota Supreme Court held that an accord and satisfaction had been reached. *Butch Levy Plumbing and Heating, Inc. v. Sallblad*, 267 Minn. 283, 126 N.W.2d 380 (1964).

■ The question in the instant case is whether the parties mutually agreed that the $17,900 check of March 26, 1981, was in full payment of any claims Action may have had against Hi-G/A.M.S. It is fundamental that an accord and satisfaction is only concluded as to those matters actually included therein. *Held v. Keller*, 135 Minn. 192, 160 N.W. 487 (1916). Thus, it must be determined what the parties intended to include in the $17,900 payment.

■ The language in the letter accompanying the check was broad. The trial court found that the terms offered an accord and satisfaction as to all claims arising out of the business dealings between A.M.S. and Action, regardless of the entity liable. It is clear, however, that this is not the only possible interpretation of the terms. The payment could be construed as limited to the remaining liability of A.M.S. under the settlement agreement of September 29, 1980, but not encompassing Action's claims against Hi-G.

The deposition testimony of Alvin Lukash emphasizes this ambiguity. Lukash believed $17,900 was the amount remaining under the Action-A.M.S. settlement agreement. He admitted that the payment had nothing to do with Hi-G since, at the time of sending the check, he was unaware of Action's fraud claim against Hi-G. At a minimum, this testimony raises an issue of material fact as to what was included in the accord and satisfaction. Thus, the trial court erred in granting summary judgment on that theory.

2. Next, we must determine whether Action's fraud claim is barred by some theory other than accord and satisfaction. Hi-G/A.M.S. contends that by accepting payment of the settlement agreement debt with knowledge of its cause of action, Action is precluded from bringing its claim for fraudulent inducement of the settlement agreement. Hi-G/A.M.S. cites *Valley v. Crookston Lumber Company*, 128 Minn. 387, 151 N.W. 137 (1915), *Maki v. St. Luke's Hospital Association*, 122 Minn. 444, 142 N.W. 705 (1913), and *Allison v. Chicago Great Western Railway Company*, 240 Minn. 547, 62 N.W.2d 374 (1954), in support of this proposition. These cases hold that acceptance and retention of the benefits of a contract, with full knowledge, will preclude an action for rescission of that contract because the acceptance of the benefits is an affirmance of the contract. However, these cases say nothing about preclusion of an independent action for damages based on fraudulent inducement of the contract.

The case of *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46 (Minn.1983), directly contradicts the argument of Hi-G/A.M.S. In that case, an owner brought

an action against a contractor's surety for breach of contract. The owner had previously settled with the contractor. The Minnesota Supreme Court stated:

> Any claim the owner may have against the surety for the acts of the contractor was waived when the contractor and owner agreed to the settlement. Having approved the settlement agreement, however, we find that the settling owner may still have rights against the nonsettling surety, as the settlement agreement failed to address all the claims the owner has against the surety. The owner claims contractual rights against the surety for the surety's alleged "independent acts" which hampered completion of construction and allegedly caused damage to the owner. The owner may also have a tort claim based on fraud if the evidence will support such a claim.

*Id.* at 51.

 As in *Barr/Nelson, Inc.,* the Action-A.M.S. settlement agreement failed to address any claims Action may have had against parties other than A.M.S. Action has sued for independent acts of Lukash and Hi-G. Therefore, there is a question whether Lukash and Hi-G were released from the fraud claim when Action affirmed the settlement with A.M.S. We cannot say as a matter of law that Action has no cause of action against Hi-G and Lukash.

■ 3. We have considered the contention of Hi-G/A.M.S. that Action will be unable to prove damages as a matter of law. We agree that the amount of damages will be limited by the amount Action originally claimed against A.M.S., minus the settlement amount. However, this does not mean the fraud claim is dependent upon Action having a claim on the original merger agreement with A.M.S. As in *Barr/Nelson, Inc.,* the fraud claim against a third party is considered independent of the contractual claim. The number of independent claims arising out of a finite amount of damage are theoretically unlimited. Action should be allowed to go forward with its proof of damages at trial.

**DECISION**

There was an issue of material fact as to whether the March 26, 1981, payment to Action was intended to be an accord and satisfaction as to Action's fraud claim. The trial court erred in granting the motion of Hi-G/A.M.S. for summary judgment on that theory. The trial court cannot be affirmed on the theory that the fraud cause of action was precluded upon Action's affirmance of the settlement agreement. The record does not justify ruling that Action, as a matter of law, is unable to prove damages.

Reversed and remanded for trial.